IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

DONALD HAYWOOD,

Plaintiff,

v.                                                      Case No. 22-cv-1007-NJR

ANTHONY WILLS, STEVEN
BOWMAN, RENA ENGELAGE,[1] and
MICHAEL MOLDENHAUER,[2]

Defendants.

## MEMORANDUM AND ORDER

ROSENSTENGEL, Chief Judge:

Plaintiff Donald Haywood, an inmate of the Illinois Department of Corrections

("IDOC") who is currently incarcerated at Menard Correctional Center, brings this action

for deprivations of his constitutional rights pursuant to 42 U.S.C. § 1983. Haywood

initially filed a Complaint (Doc. 1) alleging claims related to his autoimmune disease

(Docs. 1 and 8). He was later assigned counsel (Doc. 35) and filed an Amended Complaint

(Doc. 38). He was ultimately allowed to proceed on one count of failure to properly treat

his enflamed appendix, rheumatoid arthritis, and Sjogren's syndrome in violation of his

Eighth Amendment rights (Doc. 40).

---

[1] Haywood identified this individual at Rita Enlagage. Her counsel has identified the proper spelling of her last name as Engelage. (Doc. 42). The Clerk of Court shall note the correct name on the docket.

[2] Haywood initially sued a John Doe physician assistant who was later identified as Moldenhauer. Because Moldenhauer is now a defendant on the docket, the Clerk of Court is **DIRECTED** to term the John Doe physician assistant still listed on the docket.

This matter is currently before the Court on Haywood's motion for preliminary injunction (Doc. 52). Haywood seeks an order compelling Defendants to provide him with prompt and complete medical treatment upon his request, to include being allowed to possess medical equipment necessary for his treatment and to permit him to leave incarceration for doctor's appointments and hospital care when necessary (Doc. 52). Defendant Michael Moldenhauer filed a response (Doc. 63), and Defendants Anthony Wills, Reva Engelage, and Steven Bowman were allowed to join in Moldenhauer's response (Docs. 64, 65). Haywood filed a reply brief (Doc. 66).

On February 8, 2023, Haywood sought leave to file a supplemental brief, attaching a letter from Haywood's counsel setting forth an update on his condition (Doc. 67). All defendants have filed a response to the supplement (Docs. 71, 72).

On April 10, 2023, the Court held an evidentiary hearing on the motion. After the hearing, the parties filed supplemental briefs (Docs. 75, 80, 81, 82).

## BACKGROUND

### A. Procedural Background

#### 1. *Medical Care at Menard*

In 2016, Haywood was diagnosed with a condition called Sjogren's syndrome (Doc. 52-5, p. 1). It is an autoimmune disease which Nurse Practitioner ("NP") Michael Moldenhauer testified in an affidavit is usually identified by two common symptoms: dry eyes and dry mouth (Doc. 63-1, p. 2). It is commonly accompanied with other autoimmune disorders, including rheumatoid arthritis, which Haywood also suffers from (*Id.*). As a result of his conditions, Haywood has persistent joint pain in his hands

and knees (Doc. 52-5, p. 1). He also claims additional symptoms including chronic stomach and abdominal pain, lumps and sores on his neck, dry eyes, and dry throat, which causes choking in his sleep (Doc. 52-6, p. 1).

Haywood was previously incarcerated at Pontiac Correctional Center and was subject to a medical hold allowing him to attend outpatient appointments at the University of Illinois Medical Center in Chicago (Doc. 52-7). He also received various permits at Pontiac, including a double mattress, alternate cuffing, wrist braces, and use of waist chains (Docs. 52-8, 52-9, 52-10, 52-11).

In September 2021, after an altercation with a correctional officer at Pontiac (Doc. 52-12), Haywood was transferred to Menard Correctional Center. On September 9, 2021, Haywood received a medical intake screening which cataloged his current medications and conditions (Doc. 52-1, pp. 3-4). The intake form noted he was prescribed the following medications: Plaquenil (anti-rheumatic drug), Neurontin (pain medication), Methotrexate (immunosuppressant medication), Tramadol (pain medication), Prazosin (hypertension medication), Cymbalta (anti-depressant), Depakene (medication for psychiatric conditions and migraines), Nasacort (allergy medication), Xopenex (asthma inhaler), Erythromycin drops (antibiotic for an eye infection), and folic acid (*Id*.). It was also noted that he had a low bunk, low gallery, and alternate cuffing/security belt permits (*Id*. at p. 4).

While at Menard, Haywood was seen in the healthcare unit on three occasions. On September 12, 2021, he was seen at nurse sick call for collar bone pain (Doc. 52-1, p. 6). No obvious signs of swelling, redness, or bruising were noted, but the area was tender to

the touch (*Id*.). He was provided with ibuprofen and referred to the doctor (*Id*.). He was also informed a nurse had called the pharmacy to ensure all of his medications from Pontiac would be filled (*Id*. at p. 7). He was informed that at Menard, his Neurontin would be crushed and floated per prison protocol (*Id*. at p. 6). Haywood informed the nurse that he had numerous permits while at Pontiac, including permits for water bottles, ice, a double mattress, waist chain, and daily showers (*Id*. at p. 7). He also expressed concerns about his ability to see a rheumatologist and an eye doctor as he was on a medical hold on Pontiac for those appointments. The nurse noted that she would notify medical furlough about his appointments and referred him to the doctor for an evaluation for his conditions and permits (*Id*. at p. 7). The nurse noted Haywood as a high priority (*Id*.).

On September 14, 2021, Haywood saw NP Moldenhauer for his conditions and permits (Doc. 63-2, p. 2). Moldenhauer ordered x-rays for Haywood's collar bone because he continued to complain of pain (*Id*.). Moldenhauer also issued Haywood permits for low bunk, low gallery, and double cuffing (*Id*.). Haywood returned to the nurse sick call line five days later for pain in his lower back. He also complained that he did not want his pain medications to be cut and floated, as they caused him gastrointestinal issues (*Id*. at p. 7). The nurse documented that he was noncompliant with his medications (*Id*. at p. 5). Medication administration records documented a number of "R" refusals for Tramadol and Neurontin (Doc. 63-2, pp. 25-26). The nurse noted that Haywood also needed evaluated for his additional permits from Pontiac including a permit for three water bottles, ice, a double mattress, and a double pillow (*Id*.). He was referred to the

medical doctor (*Id*. at pp. 5-7). That same day, Haywood filed a grievance complaining that he was on a medical hold at Pontiac and he would not be able to attend his outside appointments due to his transfer (Doc. 52-34, pp. 1-2). His grievance acknowledged that he was transferred due to a fight with guards and staff at Pontiac (*Id*.).

### 2. *Transfer to Cook County*

Three days later, on September 22, 2021, Haywood transferred to the Cook County Jail for re-sentencing (Doc. 52-15). While at Cook County, Haywood complained of abdominal pain, knots in his neck, and other pain. On October 19, 2021, he was transported to the emergency room at Stroger Hospital, complaining of stomach pain (Doc. 52-3, p. 9). The medical records note that Haywood began complaining of abdominal pain one day earlier, and a CT scan diagnosed him with appendicitis (*Id*.). Haywood had an appendectomy and cholecystectomy (gallbladder removal) (*Id*. at pp. 26, 83). In late December 2021, Haywood complained of face swelling and worsening dry mouth and oral burning (*Id*. at p. 26). A CT scan identified swollen lesions attributed to his condition that were infected (*Id*. at pp. 46-47, 56-57). The medical records note that the lesions developed over a two-week period, and Haywood had not had prior episodes of the condition (*Id*. at pp. 56-57).

While at Cook County, Haywood attended two rheumatology appointments. On November 15, 2021, it was noted that Haywood was on a hunger strike and not taking any of his medications (*Id*. at p. 68). As a result, he had a lot of joint pain in his wrists, forearms, and elbows (*Id*.). He also noted dry mouth and difficulty swallowing (*Id*.). It was suggested he take prednisone, as well as his other medications (*Id*. at p. 72).

Haywood attended another rheumatology appointment on February 2, 2022 (*Id.* at p. 26). Medical records noted he started prednisone after his last appointment, but never received the medication from the jail. He was provided with a Biotene spray and eye drops for his Sjogren's (*Id.*). He complained of increased joint pain and stiffness, as well as worsening dry mouth and oral burning (*Id.*). He stated that Mace used at the jail worsened his symptoms (*Id.*). The doctor noted that his rheumatoid arthritis was "mildly active" and recommended a different medication for his condition (*Id.* at p. 32). Haywood's Biotene spray and eye drops were continued. It was also advised that Mace not be used on Haywood and that tight cuffs would cause him pain due to his arthritis (*Id.* at p. 33).

### 3. *Medical Care Since Return to IDOC Custody*

Haywood returned to IDOC custody on February 11, 2022, and he arrived at Menard that same day (Doc. 52-18). At his intake, the nurse documented his rheumatoid arthritis and Sjorgen's syndrome (Doc. 52-1, p. 10). His lengthy list of medications was also documented (*Id.* at p. 11). On February 16, 2022, he presented to the healthcare unit with concerns about his multiple health issues and his pending referral (*Id.* at p. 13). The nurse practitioner documented that Stateville and Cook County needed to be contacted for pending referrals and that Haywood's permits needed to be addressed (*Id.*).

On March 13, 2022, Haywood reported to nurse sick call for rectal bleeding, constipation, abdominal discomfort, and joint pain (Doc. 52-19). He complained the nurse refused to help him, and he no longer trusted the nurse. The nurse noted she addressed his needs in the past (*Id.*). He also complained of missed medical furloughs (*Id.*). On

March 17, 2022, a chart review noted that his permits were renewed but the double mattress was not medically indicated (Doc. 63-2, p. 8). Haywood also was referred for a rheumatology, gastroenterology (GI), and ophthalmology appointment (*Id*.). The GI consult request was marked urgent (*Id*. at p. 20). Those appointments were approved (*Id*. at pp. 21-24). The ophthalmologist appointment was set for May 5, 2022 (Doc. 52-22). The rheumatology appointment was scheduled for July 12, 2022 (Doc. 52-23).

On March 19, 2022, Haywood complained of pain in his ankles and hands and lumps on the right side of his throat (Doc. 52-20). He was directed to return if symptoms worsened (*Id*.). On April 8, 2022, NP Dearmond conducted another jacket review, indicating that a referral to pain management would not be able to treat individuals in custody and that Haywood would have to see a rheumatologist for pain management (Doc. 63-2, p. 11). The pain management referral was canceled, and Dearmond called the rheumatologist to determine if Haywood's appointment could be moved up (*Id*.). On April 19, 2022, Haywood met with a nurse practitioner for swelling in his jaw (*Id*. at p. 12). The nurse practitioner indicated that the rheumatologist would be contacted to see if Haywood's appointment could be moved up (*Id*.). Haywood was seen again the next day for hemorrhoids and a sore throat (*Id*. at p. 13). He was provided with prescriptions to address his issues (*Id*.).

On May 15, 2022, Haywood complained to a nurse that he wanted to cancel all of his medical so that he could be transferred (Doc. 63-2, p. 33). He requested a release from his medical hold. Although the nurse explained that his appointments would be canceled and he would have to start over at a new facility, Haywood proceeded with the medical

hold release (*Id.*). On May 17, 2022, he informed a nurse that he needed to see a rheumatologist, complaining of his Sjogren's syndrome, nodules in his neck, and asthma caused by the use of Mace (*Id.* at p. 34). The nurse noted that Haywood saw a nurse practitioner twice in April for the same symptoms and that they were still waiting for a response from Springfield about transfer (*Id.* at p. 35).

On May 18, 2022, Haywood saw Dr. Donald Unwin at Quantum Vision Centers for his Sjogren's syndrome (*Id.* at pp. 37- 42). The records note that Haywood had dryness and burning in both eyes. Although Haywood treated his condition with artificial tears, he informed Dr. Unwin that the artificial tears were not helping his condition (*Id.* at p. 37). Dr. Unwin instructed Haywood to continue with the artificial tears and to monitor his condition (*Id.* at p. 38). He was scheduled for a follow-up appointment in six months (*Id.*).

On May 31, 2022, Haywood saw NP Kristin Betz of the SIH Medical Group Gastroenterology (*Id.* at pp. 43-57). At the appointment, he complained of weight loss of more than 50 pounds in the last year (*Id.* at p. 43). He had been passing blood in his stools since October and had lower abdominal pain (*Id.*). He also complained of knots in his neck and throat pain (*Id.*). NP Betz ordered labs, a CT of his abdomen, an EGD, and a colonoscopy (*Id.* at p. 45). That same day, a referral for an evaluation by an ear, nose, and throat ("ENT") doctor was submitted for approval in order to assess the issues with Haywood's throat (*Id.* at p. 58). On June 3, 2022, Dearmond submitted referral requests for a CT scan, colonoscopy, and EGD (*Id.* at pp. 59-60). All of the referrals were approved (*Id.* at pp. 62-65).

Haywood continued to complain of symptoms including blood in his stool,

arthritis pain, issues with his throat, and swollen lymph nodes (*See* medical notes on June 29, 2022, July 17, 2022, August 12, 2022, and September 6, 2022 at Docs. 52-26; 52-27, 52-28). Haywood obtained a CT scan of his abdomen on July 7, 2022, which showed no acute inflammatory process in his abdomen or pelvis (Doc. 63-2, pp. 66-67).

Haywood saw Dr. Haitham Hassane, a rheumatologist, on July 12, 2022 (Doc. 63-2, pp. 68-72). Haywood reported that he had significant dry mouth and joint pain. He also reported blood in his stool (*Id*. at p. 68). Dr. Hassane ordered lab work and a new medication for Haywood's dry mouth (*Id*. at p. 70). Lab work noted low white blood and platelet counts (*Id*. at p. 73). On July 30, 2022, Haywood signed a refusal in order to lift his medical hold (*Id*. at pp. 117). Haywood had a colonoscopy with banding on August 9, 2022 (*Id*. at p. 86). He was diagnosed with Stage 2 internal hemorrhoids which were banded (*Id*.). His EGD showed a normal esophagus and stomach (*Id*. at p. 90). Haywood met with NP Betz following the procedures on August 23, 2022 (*Id*. at pp. 94-103). NP Betz directed Haywood to continue with stool softeners and to increase fiber in his diet (*Id*. at p. 102). A repeat hemorrhoid banding was discussed due to continued bleeding, but Haywood declined the procedure (*Id*.). But because of continued issues with low blood, Haywood was referred to a hematologist in September 2022 (Doc. 52-29).

In September 2022, Dearmond submitted referrals for a GI follow-up and hematologist consult; both referrals were approved (Doc. 63-2, pp. 123-126). His low gallery permit was also renewed (*Id*. at p. 136). On October 5, 2022, Dearmond submitted a referral for an ENT (ear, nose, and throat specialist) and a follow-up with Dr. Unwin, the ophthalmologist (*Id*. at p. 127-128). She also renewed his waist restraints permit (*Id*.

at p. 137). On October 17, 2022, Haywood again requested that his medical hold be lifted and he refused any medical treatment, including scheduled appointments, that would keep his hold at Menard (*Id*. at p. 138).

On October 28, 2022, Haywood complained again about his swollen neck glands (Doc. 63-2, p. 120). NP Moldenhauer noted he had good movement of neck muscles when swallowing, but he did have slight swelling of lymph nodes in his neck (*Id*.). Haywood complained that medical staff was not treating the swelling in his neck. NP Moldenhauer referred him to Belleville Memorial Hospital (*Id*.). The next day, Haywood reported constipation, and Moldenhauer prescribed him medication to help with the constipation. Moldenhauer also noted that referrals for consults with rheumatology, endocrinology, hematology, and an ENT were submitted on October 29, 2022 (*Id*. at p. 122, 129-133).

Due to continued complaints with his throat, Haywood was admitted to Barnes Jewish Hospital on December 8, 2022 (Doc. 63-2, pp. 140-162). Haywood maintains in his motion that he was not seen and, instead, sent back to Menard with instructions to return by December 12, 2022 (Doc. 52, p. 8). Medical records from the visit indicate that Haywood complained of neck swelling, difficulty swallowing, and small amounts of blood in his bowel movements (Doc. 63-2, p. 142). The treating physician found no diagnosis and noted that Haywood was being followed by specialists, including rheumatology and GI. It was also noted that Haywood had a follow-up appointment scheduled with rheumatology. The treating physician anticipated discharge without a change in Haywood's current clinical management (*Id*. at pp. 142-143). His after-visit summary indicates that his symptoms were related to his Sjogren's syndrome and rectal

bleeding (*Id*. at p. 160). He was directed to follow-up with his rheumatologist and to schedule a GI follow-up visit as needed (*Id*.).

On December 9, 2022, medical records note that a GI consult was requested; the request was labeled as urgent (*Id*. at p. 165). On December 30, 2022, Dr. Glen Babich, Wexford's regional medical director, examined Haywood (*Id*. at p. 167). Babich noted that Haywood wanted to restart his methotrexate in order to reduce the swelling in his face, and he refused crushed/liquified pain medications (*Id*.). He also wanted a release of his medical hold so that he could transfer closer to the University of Illinois in Chicago for specialist care (*Id*.). Babich sought to review all previous specialist reports and Haywood's current permits (*Id*.). He also ordered that a follow-up visit be scheduled with GI for a repeat colonoscopy and that Haywood continue with his pain medication per current orders to crush and float (*Id*.).

On January 4, 2023, NP Moldenhauer noted that the rheumatology appointment had not yet been submitted for approval; he attempted to expedite the approval (*Id*. at p. 168). A nurse note later indicated that five specialist appointments had been requested, and Haywood's medication was up to date (*Id*. at p. 170-171).

### 4. *Supplemental Filings*

After filing his motion, Haywood's counsel sought leave to file a supplemental pleading that consisted of a letter to the Court documenting a phone call between Haywood and his counsel which was held on February 8, 2023 (Doc. 67). The letter indicated that during the phone call, Haywood reported that he had not eaten in three days, had been throwing up blood for the past week, and that medical staff at Menard

indicated they would not provide him with any medical treatment until his next scheduled outpatient appointment, sometime in May 2023 (*Id*. at p. 4).

Given the serious nature of the letter, the Court directed Defendants to respond. Both Moldenhauer and the IDOC Defendants (Anthony Wills, Reva Engelage, and Steven Bowman) filed responses (Docs. 71 and 72). Defendants reported that Haywood had been seen by medical staff on numerous occasions in the days leading up to the recent phone call with his counsel. Specifically, on January 8, 2023, Haywood saw NP Dearmond. She noted that referrals had been placed for a GI follow-up, a repeat colonoscopy with hemorrhoid banding, and a rheumatology follow-up (Doc. 71-1, p. 76). Referrals had also been placed for hematology, ENT, and endocrinology (*Id*.).

In addition, on January 12 and 16, 2023, Haywood had EKGs, which both showed a normal sinus rhythm (Doc. 71-1, pp. 58-59). On January 19, 2023, he had a chest x-ray which showed no acute cardiopulmonary process (*Id*. at p. 60).

On January 20, 2023, Haywood was seen by NP Dearmond for a pre-op visit for the scheduled colonoscopy with banding. Haywood also requested that his permits be renewed (*Id*. at p. 80). He reported numbness in the left side of his face and continued swelling on the right side of his neck (*Id*.). He denied having nausea or vomiting, although he noted he had headaches (*Id*.). Dearmond renewed his medical permits and referred him for an MRI for his swelling and numbness (*Id*.). Dearmond noted Haywood had recently refused an ophthalmology referral because he requested to be transferred and wanted his medical hold lifted, but Dearmond noted he was not transferring at that time and instructed that Haywood keep all of his appointments so that his doctors could

Page 12 of 23

gain clarity as to his condition (*Id*. at pp. 80-81). Following the appointment, Dearmond put Haywood in for a face and neck MRI, brain MRI, and ophthalmology evaluation (*Id*. at pp. 37-39). Those requests were approved (*Id*. at pp. 36, 40-41, 48). Specifically, the MRIs were approved on January 23, 2023, and the ophthalmology referral was approved on February 7, 2023 (*Id*.).

On January 27, 2023, Haywood had his colonoscopy with banding procedure (*Id*. at pp. 31, 90, 92). At the time of filing, those records had not been received by Wexford. Also at the time of filing, Haywood was scheduled for a GI appointment on February 28, 2023, a rheumatology appointment on May 10, 2023, and an endocrinology appointment on June 28, 2023 (*Id*. at p. 34).

On February 8, 2023, the day of his phone call with counsel, Haywood presented to the nurse sick-call line at 8:30 a.m. with a sore throat. He complained of blood when blowing his nose and a burning in his throat (*Id*. at p. 103). The nurse also noted that his throat was red, and Haywood could not speak (*Id*.). He was referred to the doctor (*Id*.). At 9:24 a.m., it was noted that he ambulated without difficulty, had a steady gate, and clear lungs (*Id*. at p. 104). There was no evidence of respiratory distress, and his respiration was even and unlabored (*Id*.). It was noted that Haywood was "refusing to speak" stating that he was saving his voice for his legal call that day (*Id*.). He wrote information on a piece of paper (*Id*.). He complained of throat pain but denied any other issues (*Id*.).

At 9:35 a.m. that same day, Haywood was seen by NP Dearmond (*Id*. at p. 105). It was noted that he was nonverbal and wrote a note saying he was saving his "verbal talk"

for a call with his lawyer (*Id*.). After an examination, Dearmond noted his ears were clear, but he had slight inflammation and blood in his nasal passage (*Id*.). His throat had enlarged tonsils with slight redness (*Id*.). He continued to have swelling on the right side of his neck (*Id*.). Dearmond noted that Haywood was scheduled for an MRI of his neck the following week and an ENT visit in April. She prescribed a steroid, cough drops, and chloraseptic throat spray (*Id*.). After the visit, she contacted the ENT to see if there were any appointments before April. Although there were no openings, Haywood was placed on a waiting list (*Id*. at p. 106).

On April 6, 2023, Haywood submitted a supplemental affidavit documenting his medical care (Doc. 73). As to his current care, Haywood testified that throughout February and March his condition has not improved. He continues to cough to the point of vomiting blood and has throat pain and burning. He still suffers from swelling in his face and neck, as well as rectal bleeding (*Id*. at pp. 22-23). Haywood believes that he needs to be removed from Menard because "the amount of smoke, MACE, and conditions…at Menard exacerbate [his] Sjogren's Syndrome symptoms such as dry eyes, mouth, and [his] persistent throat burning." (Doc. 73, p. 23).

## B. Evidentiary Hearing

At the hearing, Haywood and Nurse Practitioner Alisa Dearmond testified about Haywood's current condition and care.

### 1. *Donald Haywood*

Haywood testified that while at Pontiac Correctional Center, he was under the care of Midwest Orthopedics at Northwestern Illinois University, and specialists there

were able to better manage and monitor his condition because he had more outside appointments. But while at Menard, Haywood testified that he received less care. He submitted sick call slips and tried to talk to officers about his need for care. As of January 2023, the cellhouse he had been housed in at Menard had a lot of smoke, which irritates his condition. Haywood testified that his condition worsened by February 2023. He could not speak because his throat burned from coughing. He was also coughing up blood and his face swelled.

Haywood also testified that he was scheduled for a colonoscopy and a rheumatology appointment in either May or June. His last appointment with a rheumatologist was in June or July of 2022. A week before the evidentiary hearing, Haywood was sent to Barnes Jewish Hospital, and providers there directed him to be seen by a rheumatologist. He testified that he had not seen anyone at Menard since returning from the hospital. He testified that, at the time of the hearing, his throat still burns and his glands are swollen.

Haywood testified that he did not have any appointments currently scheduled and had to sign a release on his medical hold in order to be eligible for transfer. He wanted to transfer to a facility which had doctors. Although he signed the release, Haywood testified that he told officials that he did not want to stop his treatment. The release caused all of his current appointments to be canceled. Haywood testified that no one told him his appointments would be canceled, and he believed that he would still be sent to any remaining appointments. But Haywood acknowledged that when he signed a previous refusal form, his outside appointments were canceled. He also acknowledged

that when he signed the refusal he knew of appointments that were scheduled in February, April, May, and June. He testified that when he previously signed a refusal form in July, he told providers he wanted to go to any appointments that were scheduled while he was still at Menard (Doc. 66, p. 21). He wrote on the refusal from that he wanted to be transferred to a facility where he could see a doctor and receive better care (*Id*.).

### 2. *Alisa Dearmond*

Dearmond, a nurse practitioner at Menard Correction Center, testified about the care Haywood has received since arriving at Menard. Dearmond testified that on February 15, 2023, Haywood signed a medical refusal. Inmates who are scheduled for outside referrals are placed on a medical hold which prohibits a transfer. In order to lift the hold and be able to transfer to another prison, an inmate must sign a medical refusal. Even if an inmate wishes to keep his appointments, in order to be eligible for transfer, an inmate must sign a refusal. Dearmond testified that there is no way to keep the appointments on the schedule until the transfer is approved because it could cause a delay in care. Signing a refusal form does not guarantee a transfer. Dearmond testified that she told Haywood in the past that if he knows he is not going to be transferred, he needs to contact the healthcare unit so those referrals can again be scheduled.

The refusal Haywood signed indicates that Haywood refuses all treatment including referrals out of the prison for care. The refusal allows any outside appointments to be canceled because scheduled appointments would prohibit an inmate from transferring to another prison. Although Haywood continues to receive care for his condition at the prison, all outside appointments are canceled so that the medical hold

can be lifted and Haywood can be eligible for transfer.

Dearmond testified that she was not present when Haywood signed the refusal, but a nurse was present for his signature. She recalled having numerous discussions with Haywood about the effect of signing a refusal form. Haywood previously had appointments scheduled for rheumatology and an ENT that were canceled. Appointments for hematology and ophthalmology were never set due to Haywood's signed refusal.

Dearmond testified that Haywood would have gone to those appointments if he had not signed the refusal form. She testified that he would have gone much earlier to the appointments because Haywood had referrals that were previously canceled due to a different type of refusal he signed. But the appointments had been reset when he came back to sick call seeking referrals. Although previously approved for a transfer, Dearmond testified that Haywood currently had two new referrals from his visit to Barnes Jewish Hospital. Haywood received a referral to rheumatology and an ENT referral.

### C. Subsequent Filings

After the hearing, the parties submitted supplemental briefs. On April 17, 2023, Defendants Anthony Wills, Reva Engelage, and Steven Bowman filed a supplemental response (Doc. 75). Defendants indicated Haywood was previously approved for a transfer and was awaiting the decision of the Transfer Coordinator's Office. Three days after the hearing, on April 13, 2023, Haywood was transferred to Hill Correctional Center (Doc. 82). Defendants argued that Haywood's transfer rendered his request for injunctive

relief moot.

In response, Haywood filed a supplement (Doc. 80) acknowledging that he was transferred to Hill on April 13, 2023. Haywood argued that his request for injunctive relief was not moot, however, because he brought claims against Steven Bowman, IDOC's medical director, who is responsible for medical care of inmates at all correctional facilities. Further, Haywood argued that he was not currently receiving treatment for his ailments at Hill. Since transferring, Haywood argued that staff confiscated his permits and medications for his conditions. At the time of his filing, Haywood had also not yet received information about the scheduling of outpatient appointments.

## LEGAL STANDARDS

### A. Preliminary Injunction Standard

A preliminary injunction is an "extraordinary and drastic remedy" for which there must be a "clear showing" that a plaintiff is entitled to relief. *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (quoting 11A Charles Alan Wright, Arthur R Miller, & Mary Kay Kane, Federal Practice and Procedure §2948 (5th ed. 1995)). The purpose of such an injunction is "to minimize the hardship to the parties pending the ultimate resolution of the lawsuit." *Faheem-El v. Klincar*, 841 F.2d 712, 717 (7th Cir. 1988). A plaintiff has the burden of demonstrating:

1. a reasonable likelihood of success on the merits;
2. no adequate remedy at law; and
3. irreparable harm absent the injunction.

*Planned Parenthood v. Commissioner of Indiana State Dep't Health*, 699 F.3d 962, 972 (7th Cir.

2012).

As to the first hurdle, the Court must determine whether "plaintiff has any likelihood of success—in other words, a greater than negligible chance of winning." *AM General Corp. v. DaimlerChrysler Corp.*, 311 F.3d 796, 804 (7th Cir. 2002). Once a plaintiff has met his burden, the Court must weigh "the balance of harm to the parties if the injunction is granted or denied and also evaluate the effect of an injunction on the public interest." *Id.*; *Korte v. Sebelius*, 735 F.3d 654, 665 (7th Cir. 2013). "This equitable balancing proceeds on a sliding-scale analysis; the greater the likelihood of success of the merits, the less heavily the balance of harms must tip in the moving party's favor." *Korte*, 735 F.3d at 665. In addition, the Prison Litigation Reform Act provides that a preliminary injunction must be "narrowly drawn, extend no further than necessary to correct the harm . . . ," and "be the least intrusive means necessary to correct that harm." 18 U.S.C. § 3626(a)(2). Finally, pursuant to Federal Rule of Civil Procedure 65(d)(2), a preliminary injunction would bind only the parties, their officers or agents, or persons in active concert with the parties or their agents.

### B. Deliberate Indifference

Prison officials violate the Eighth Amendment's proscription against "cruel and unusual punishments" if they display deliberate indifference to an inmate's serious medical needs. *Greeno v. Daley*, 414 F.3d 645, 652–53 (7th Cir. 2005) (*quoting Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (internal quotation marks omitted)). *Accord Rodriguez v. Plymouth Ambulance Serv.*, 577 F.3d 816, 828 (7th Cir. 2009) ("[D]eliberate indifference to serious medical needs of a prisoner constitutes the unnecessary and wanton infliction of

pain forbidden by the Constitution."). A prisoner is entitled to reasonable measures to meet a substantial risk of serious harm — not to demand specific care. *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997).

To prevail, a prisoner who brings an Eighth Amendment challenge of constitutionally deficient medical care must satisfy a two-part test. *Arnett v. Webster*, 658 F.3d 742, 750 (7th Cir. 2011) (*citing Johnson v. Snyder*, 444 F.3d 579, 584 (7th Cir. 2006)). The first prong that must be satisfied is whether the prisoner has shown he has an objectively serious medical need. *Arnett*, 658 F.3d at 750. *Accord Greeno*, 414 F.3d at 653. A medical condition need not be life-threatening to be serious; rather, it could be a condition that would result in further significant injury or unnecessary and wanton infliction of pain if not treated. *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010). *Accord Farmer v. Brennan*, 511 U.S. 825, 828 (1994) (violating the Eighth Amendment requires "deliberate indifference to a substantial risk of serious harm.") (internal quotation marks omitted) (emphasis added).

Prevailing on the subjective prong requires a prisoner to show that a prison official has subjective knowledge of—and then disregards—an excessive risk to inmate health. *Greeno*, 414 F.3d at 653. A plaintiff need not show the individual literally ignored his complaint, just that the individual was aware of the serious medical condition and either knowingly or recklessly disregarded it. *Hayes v. Snyder*, 546 F.3d 516, 524 (7th Cir. 2008).

### ANALYSIS

Simply put, Haywood's request for injunctive relief is now moot due to his transfer to Hill Correctional Center. "If a prisoner is transferred to another prison, his request for

injunctive relief against officials of the first prison is moot unless 'he can demonstrate that he is likely to be retransferred.'" *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996). Allegations of likely retransfer must rise above mere speculation. *Id*. Further, the "capable-of-repetition doctrine" is exceptional, only applying when a plaintiff can show "that he will again be subject to the alleged illegality." *Id*. Haywood's Amended Complaint alleged that since transferring to Menard Correctional Center, individuals at Menard failed to properly treat his various medical conditions (*See* Docs. 38, p. 8-11; 40, p. 4). His Amended Complaint focused solely on the care that he received at Menard, and he is no longer being housed at Menard. Further, Haywood fails to offer any evidence or argument to suggest that he is likely to be transferred back to Menard in the near future.

Instead, Haywood argues that his request for injunctive relief should not be considered moot because he brought a claim against Steven Bowman, in addition to Menard employees. Steven Bowman is the Agency Medical Director for the Illinois Department of Corrections. Haywood argues that his request for injunctive relief falls into the exemption to mootness outlined in *Higgason* because he is seeking relief "from a system-wide policy," and he has now been transferred to a facility where that same policy applies. *See Lehn v. Holmes*, 364 F.3d 862, 871-72 (7th Cir. 2004) (*Higgason* does not address the issue of "whether a prisoner who seeks relief from a condition that stems from a system-wide policy, who is then transferred to a different facility within the same system where the objectionable policy also applies, states a claim."). But in *Lehn*, the plaintiff took issue with an IDOC practice as a whole, a practice present at multiple facilities. Haywood raised no such policy or practice claim in his Amended Complaint. In fact, the Court

noted in its merits review Order that Haywood failed to raise a pattern or practice claim against any defendant in their official capacities (Doc. 40, p. 4 n. 2). Further, Haywood only alleged that Bowman failed to respond to letters written to him about the specific care Haywood was experiencing at Menard (*Id*. at p. 4). He does not allege that Bowman denied his access to outside providers or implemented any policy that caused Haywood's alleged deprivation.

Haywood's Amended Complaint only raises claims associated with specific care he received at Menard. Further, the records and testimony indicate that Haywood was receiving care while at Menard Correctional Center. Dearmond testified that Haywood was scheduled for a number of outside appointments and was in the process of being scheduled for additional outside appointments. Those appointments were only terminated when Haywood signed his most recent medical services refusal form.

Haywood signed previous refusal forms in May, July, and October 2022 (Doc. 73, pp. 111-112). Each time Haywood signed a refusal form, in an attempt to seek a transfer to a facility where he believed he would receive better care, his outside appointments were canceled, and his medical hold was lifted. The Court notes that numerous refusal form submissions and subsequent referrals in the record appears to have put Haywood in a holding pattern at Menard. With each refusal form, his appointments were canceled. But his transfer was then delayed due to subsequent medical holds placed on Haywood when he did seek care. Thus, Haywood went months without seeing a specialist or being transferred. Although the Court finds this practice troubling, Haywood raised no such policy or practice claim in his Amended Complaint. Further, Haywood has now received

Page 22 of 23

the transfer that he had been requesting and is currently waiting for outside appointments to be scheduled at his new facility. Nothing in the record indicates that any of the named Defendants are currently delaying any medical care or outside referrals. As such, the Court finds that Haywood's request for injunctive relief regarding his care at Menard is now moot.

CONCLUSION

For these reasons, Haywood's motion for preliminary injunction (Doc. 52) is **DENIED as moot**.

**IT IS SO ORDERED.**

DATED:   **June 2, 2023**

_____
**NANCY J. ROSENSTENGEL**
**Chief U.S. District Judge**